**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**LAWRENCE GALVIN,**

**Plaintiff,**

**v.**

**DAVID E. WILSON, DSN 7893**

**Serve: St. Louis Metro Police Dept.**
**1915 Olive Street**
**St. Louis, Missouri 63103,**

**and**

**MICHAEL R. STEWART, DSN 4178**

**Serve: St. Louis Metro Police Dept.**
**1915 Olive Street**
**St. Louis, Missouri 63103,**

**and**

**TERRENCE RUFFIN, DSN 11566**

**Serve: St. Louis Metro Police Dept.**
**1915 Olive Street**
**St. Louis, Missouri 63103,**

**and**

**CLAYTON CHARLEVILLE, DSN 4049**

**Serve: St. Louis Metro Police Dept.**
**1915 Olive Street**
**St. Louis, Missouri 63103,**

**and**

**CITY OF ST. LOUIS, MISSOURI**

**Serve: Office of the Mayor**
**1200 Market Street, Room 200**
**St. Louis, MO 63103,**

***JURY TRIAL DEMANDED***

**Defendants.**

## COMPLAINT

COMES NOW Plaintiff Lawrence Galvin ("Plaintiff" or "Galvin"), by and through undersigned counsel, and for his Complaint for Damages against Defendants David E. Wilson, Terrence Ruffin, Clayton Charleville, Michael R. Stewart, and the City of St. Louis, Missouri, hereby states as follows:

## INTRODUCTION

1. On the night of September 3, 2021, Plaintiff Lawrence Galvin, then twenty-four years old, was driving when an black, unmarked vehicle occupied by plainclothes St. Louis Metropolitan Police Department detectives attempted to stop him for an alleged traffic violation. Plaintiff did not know that the vehicle was a police vehicle, or that the men inside it were police officers. A vehicle pursuit followed, ending near the intersection of Durness Drive and Kirkwall Drive. Plaintiff had never seen a vehicle like the one following him and did not recognize it as a police vehicle.

2. Plaintiff exited his vehicle, near the intersection of Durness Drive and Kirkwall Drive and approximately ten feet from his vehicle, Plaintiff obeyed commands to lay on the ground and raised both hands, open and empty, above his head. No officer had yet reached him. Plaintiff was unarmed. His hands were empty, raised, and plainly visible to every officer present.

3. Upon information and belief, it was Officer Terrence Ruffin, DSN 11566, advancing on Plaintiff stating: "I'mma shoot your ass. I'mma shoot you, lay the fuck on the ground!"

4. Plaintiff complied immediately.

5. At that point, with Plaintiff seated or laying on the ground and holding his hands above his head while facing the officers, in complete surrender, Defendant David E. Wilson struck Plaintiff once in the eye with a closed fist. Defendant Wilson has admitted in the police report that he struck Plaintiff with a closed fist. No officer was injured in the encounter.

6. The closed-fist strike to Plaintiff's face caused a laceration through the tear duct of his left eye. Defendant Wilson himself observed "a contusion to his left eye" at the scene. Plaintiff was transported to Saint Louis University Hospital and admitted for surgery to the tear duct of his eye and to his knee. Plaintiff also had a dislocated shoulder. He has since undergone four surgeries on his eye, faces the prospect of more, and is left with permanent injuries, chronic tearing, vision disturbances, light sensitivity, headaches, dizziness, and pain on blinking.

7. If there was justification to use force during the vehicle pursuit, that justification had ended by the time Defendant Wilson threw his punch. A closed-fist strike to the face and eye of an unarmed man seated or lying down on the ground with his hands above his head, as well as additional force causing a dislocated shoulder is not a reasonable seizure.

8. Plaintiff brings this action for damages for violations of the Fourth Amendment, cognizable under 42 U.S.C. § 1983.

## PARTIES

9. Plaintiff Lawrence Galvin is and was at all times relevant herein a citizen of the United States of America and a resident of the State of Missouri.

10. Defendant David E. Wilson, DSN 7893 ("Defendant Wilson"), was at all times relevant a detective with the St. Louis Metropolitan Police Department. He is sued in his individual capacity. At all relevant times he was acting within the scope and course of his employment and under color of state law.

11. Defendant Michael R. Stewart, DSN 4178 ("Defendant Stewart"), was at all times relevant a Detective Sergeant with the St. Louis Metropolitan Police Department with supervisory responsibility over Defendant Wilson, including his uses of force. Defendant Stewart responded to and supervised the scene of the incident and thereafter reviewed and approved Defendant Wilson's report. Defendant Stewart approved Defendant Wilson's narrative report at 11:11 a.m. on September 15, 2021. He is named in his individual capacity and was acting within the scope and course of employment and under color of law.

12. Defendant Terrence Ruffin, DSN 11566 ("Defendant Ruffin"), was at all times relevant a police officer with the St. Louis Metropolitan Police Department assigned to the Mobile Reserve Unit. He is sued in his individual capacity. At all relevant times he was acting within the scope and course of his employment and under color of state law.

13. Defendant Clayton Charleville, DSN 4049 ("Defendant Charleville"), was at all times relevant a detective with the St. Louis Metropolitan Police Department working in an undercover capacity with Defendant Wilson. He is sued in his individual capacity. At all relevant times he was acting within the scope and course of his employment and under color of state law.

14. Defendant City of St. Louis, Missouri ("the City") is a body politic, municipal corporation and/or political subdivision of the State of Missouri. At all times relevant to this Complaint, the City operated with authority over the St. Louis Metropolitan Police Department, including responsibility for the training, supervision, and discipline of its officers.

**JURISDICTION AND VENUE**

15. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

16. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the City of St. Louis and St. Louis County, Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17. The allegations contained above are hereby realleged and reincorporated as if fully set forth herein.

18. On the night of September 3, 2021, Defendant Wilson and Detective Clayton Charleville were working in an undercover capacity.

19. Defendant Wilson attempted to initiate a traffic stop of Plaintiff's vehicle on North Broadway.

20. Plaintiff did not recognize the unmarked vehicle behind him as a police vehicle.

21. What began as an attempted traffic stop for alleged traffic violations escalated into a vehicle pursuit.

22. No person was injured during the pursuit. No officer was injured. Plaintiff did not use, display, or threaten any person with any weapon at any time.

23. The vehicles stopped at the intersection of Durness Drive and Kirkwall Drive, where Plaintiff exited his vehicle.

24. Officer Terrence Ruffin, DSN 11566, advanced on Plaintiff stating: "I'mma shoot your ass. I'mma shoot you, lay the fuck on the ground!"

25. Plaintiff complied with police instructions and sat down on the ground.

26. Seated on the ground, Plaintiff was facing officers and raised both hands above his head.

27. From that moment until he was struck, Plaintiff remained seated on the ground with his hands above his head. He did not stand up, run, or attempt to flee. He did not strike, kick, push, or reach toward any officer. He did not attempt to conceal his hands, which were visibly empty.

28. Officers approached Galvin where he was sitting on the ground with his hands above his head. Plaintiff had submitted to police authority and was visibly, unambiguously surrendering.

29. While Plaintiff's hands were raised, Defendant Wilson then struck Plaintiff in the face with a closed fist.

30. A closed-fist strike to the head or face is a significant use of force. It is not a control hold, a compliance technique, or a handcuffing maneuver

31. Upon information and belief., Officers Ruffin and Charleville then tackled or used physical force against Plaintiff, after he was punched, and took hold of Plaintiff where he sat and applied significant physical force to his arms and body.

32. Upon information and belief, Defendant Ruffin was the first officer to reach Plaintiff after Plaintiff was punched by Defendant Wilson, and it was Defendant Ruffin who took hold of Plaintiff's arms and applied significant physical force to Plaintiff's arms and body while Plaintiff was seated on the ground with his hands above his head. Defendant Wilson's report states that Defendant Ruffin attempted to detain Plaintiff and that Plaintiff's arms were in Defendant Ruffin's grasp.

33. Upon information and belief, Defendant Charleville, together with Defendant Ruffin, physically engaged Plaintiff while Plaintiff was seated on the ground with his hands above his head, and applied physical force to Plaintiff's body causing further damage to his knee and shoulder.

34. Plaintiff did not pull his arms away from any officer, did not struggle with any officer, and did not refuse any command. Plaintiff had already submitted to police authority and was seated on the ground with his hands above his head.

35. The force applied to Plaintiff's arms and body while he was seated on the ground dislocated Plaintiff's right shoulder. Upon information and belief, that force was applied by Defendant Ruffin, by Defendant Charleville, or by both of them acting together.

36. Within minutes, and while still at the scene, Plaintiff complained of right shoulder pain to Defendant Wilson and stated on body-worn camera that his arm felt like it was broken. He repeated the complaint to the responding paramedics and again while being conveyed from the scene, and a second ambulance was summoned. Defendant Wilson's report records that Plaintiff reported right shoulder pain on each of those occasions. Plaintiff was also bleeding profusely from an obviously disfigured left eye.

37. Upon information and belief, Defendants Wilson, Ruffin and Charleville assaulted Plaintiff and otherwise took physical action against him while he was seated on the ground, unarmed, with his hands above his head and not resisting, and the force they applied — individually, in combination, or in concert with Defendant Wilson — caused Plaintiff physical injury, including the dislocation of his right shoulder, injury to his knee, and injury to his left eye, neck and back.

38. The incident report records in three separate places that no officer was injured, and records the injuries to the law enforcement officer listed as a victim as "None."

39. No report generated in connection with this incident states that Plaintiff struck, kicked, bit, or attempted to disarm any officer.

40. Defendant Wilson's written narrative of the incident is materially false. It asserts that Officer Ruffin attempted to detain Plaintiff and Plaintiff "quickly pulled his arms from Officer Ruffin's grasp"; that "a struggle began"; that Plaintiff "continued to pull his arms from Officer

Ruffin's grasp refusing all verbal commands"; and that Plaintiff was "violently struggling" to escape when Defendant Wilson delivered the strike.

41. But police body camera footage recorded by other officers present shows that none of that occurred. It shows Plaintiff seated on the ground, facing the officers, with his hands raised above his head, immediately before Defendant Wilson struck him in the eye and before Defendant Ruffin and Charleville physically engaged Plaintiff.

42. Upon information and belief, the incident report is false in a further respect. Its administrative fields state that no officer pointed a weapon at a civilian or suspect during this incident but body camera footage captures an officer yelling, "I'mma shoot your ass. I'mma shoot you, lay the fuck on the ground!". Upon information and belief, Officer Ruffin's or another officer's firearm was drawn and pointed at Plaintiff.

43. Plaintiff saw an officer pull a firearm and point it directly at him and shout and believe the officer who pulled the firearm was Defendant Ruffin.

44. Defendant Wilson's report was created on September 4, 2021. Defendant Wilson did not author the narrative until September 15, 2021 — twelve days after the incident. He submitted it at 10:41 a.m. that day. Defendant Stewart approved it at 11:11 a.m., and a supervisory officer, Christian J. Stamper, DSN 5672, approved and closed the report at 11:15 a.m. The entire supervisory review of a use of force resulting in permanent disfigurement was completed in thirty-four minutes, and the review history identifies no materials reviewed and reflects no corrective action. A later supplement states that Defendant Wilson prepared a warrant application and emailed it, with supporting evidence, to the Circuit Attorney's Office on September 15, 2021.

45. Upon information and belief, Defendant Wilson authored the false narrative in order to manufacture a justification for the force he had used and to support a charging request against Plaintiff that would insulate that force from scrutiny.

46. At the scene, Defendant Wilson observed and recorded "a contusion to his left eye" and "large abrasions on each knee." Plaintiff's left eye was bleeding profusely and appeared visibly deformed. The blood and the condition of Plaintiff's eye and face are visible in Officer Ruffin's body camera recording.

47. Plaintiff was transported by ambulance to Saint Louis University Hospital and was admitted for multiple surgeries.

48. As a direct and proximate result of Defendant Wilson's use of force, Plaintiff has undergone four surgical procedures on his left eye and anticipates additional surgery. He suffers permanent tear duct scarring, chronic and continuous tearing, severe light sensitivity, headaches, pain upon blinking, and impaired vision.

49. Plaintiff also sustained an injury to his knee requiring surgery, right shoulder, dislocation, requiring ongoing physical therapy.

50. Plaintiff, who was employed and supporting a young son at the time of the incident, has been substantially impaired in his ability to work.

51. On May 20, 2024, Plaintiff filed a complaint with the St. Louis Metropolitan Police Department regarding this incident, which the Department received on May 21, 2024. The complaint was assigned Internal Affairs Division file number 24-0594. The Department classified the complaint as NOT SUSTAINED, and imposed no discipline, retraining, counseling, or corrective action of any kind on Defendant Wilson, Ruffin or Charleville.

52. Pursuant to St. Louis Metropolitan Police Department procedure, when an Internal Affairs investigation is completed the file is forwarded through the Department's chain of command, with commanders making recommendations at each level, to the Police Commissioner. Upon information and belief, the findings of Internal Affairs Division file 24-0594 were memorialized on an Administrative Reports Transmittal Sheet and routed through that chain of command.

53. Upon information and belief, one or more Department officials in that chain of command reviewed the investigative file, including the body-worn camera recordings of Plaintiff's surrender and of the ensuing encounter, and approved both the classification of the Internal Affairs allegations as not sustained and the decision to impose no discipline, retraining, counseling, or corrective action.

54. At all times relevant, Defendant Wilson, Ruffin and/or Charleville's conduct was objectively unreasonable, and the City and the supervisory Defendant Michael R. Stewart acted with deliberate indifference to Plaintiff's constitutional rights.

55. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered and continues to suffer significant physical and psychological harm, disfigurement, pain and suffering, emotional distress, medical expense, lost earnings and earning capacity, and other related damages.

56. Upon information and belief, an insurance policy or self-insurance program exists that encompasses and covers the actions of all individual Defendants and St. Louis City.

57. Plaintiff requests a trial by jury on all counts.

## COUNT I
## UNLAWFUL USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT, COGNIZABLE UNDER 42 U.S.C. § 1983

Against Defendants Wilson, Ruffin, and Charleville

58. Plaintiff hereby incorporates the preceding paragraphs by reference as if fully set forth herein.

59. Plaintiff had a clearly established constitutional right to be free from the excessive use of force by St. Louis Metropolitan Police Department officers, including Defendant Wilson, Ruffin and Charleville.

60. The reasonableness of a use of force is measured at the moment the force is applied. Force that may be justified while a suspect is actively fleeing or actively resisting but becomes unreasonable once flight and resistance have ended.

61. At the moment Defendant Wilson struck Plaintiff in the face with a closed fist, Plaintiff's flight had ended, Plaintiff was seated on the ground facing the officers with both hands raised above his head, Plaintiff was unarmed and his hands were empty and visible, and Plaintiff posed no immediate threat to the safety of Defendant Wilson or anyone else.

62. Defendant Wilson's use of force was objectively unreasonable under the totality of the circumstances and violated Plaintiff's clearly established Fourth Amendment rights, particularly because Plaintiff was unarmed, did not threaten any officer, did not strike any officer, injured no officer, was no longer fleeing, had visibly and unambiguously surrendered, and was seated on the ground with his hands above his head when the strike was delivered. Whatever traffic offenses the officers believed Plaintiff had committed initiating the pursuit, the conduct underlying those offenses had ended before Defendant Wilson struck him, and none of it presented any continuing threat at the moment force was applied.

63. Defendant Wilson had less intrusive means readily available to him and chose instead to deliver a strike to Plaintiff's eye.

64. By striking Plaintiff in the eye with a closed fist while Plaintiff was seated and surrendering, Defendant Wilson escalated the danger of the situation and inflicted serious and permanent physical injury upon Plaintiff.

65. Upon information and belief, Defendant Ruffin applied the physical force to Plaintiff's arms, knee, and body described above. That use of force was objectively unreasonable and violated Plaintiff's clearly established Fourth Amendment rights. At the moment that force was applied, Plaintiff's flight had ended, Plaintiff was seated on the ground with both hands raised above his head, open, and empty, Plaintiff was unarmed, and Plaintiff posed no immediate threat to the safety of any officer. Less intrusive means were readily available.

66. As a direct and proximate result of Defendant Ruffin's unlawful actions, Plaintiff suffered damages, including a dislocated right shoulder that continues to subluxate and requires ongoing physical therapy, and injuries to his knees, neck, and back.

67. Upon information and belief, Defendant Charleville likewise applied physical force to Plaintiff while Plaintiff was seated on the ground with both hands raised above his head, unarmed, and not resisting. That use of force was objectively unreasonable, violated Plaintiff's clearly established Fourth Amendment rights, and contributed to the injuries described above.

68. The conduct of Defendant Ruffin and Charleville involved reckless or callous indifference to Plaintiff's federally protected rights, thereby warranting punitive damages under 42 U.S.C. § 1983. At all times relevant, Defendants Ruffin and Charleville were acting under color of state law.

69. As a direct and proximate result of Defendant Wilson, Ruffin and Charleville's unlawful actions, Plaintiff suffered damages, including but not limited to permanent physical injuries and mental injury.

70. The conduct of Defendant Wilson involved reckless or callous indifference to Plaintiff's federally protected rights, thereby warranting punitive damages under 42 U.S.C. § 1983. Defendant Wilson's preparation of a written narrative that materially misdescribed Plaintiff's conduct in order to justify the strike further evidences that indifference.

71. At all times relevant, Defendant Wilson was acting under color of state law.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff compensatory and punitive damages in an amount to be proven at trial; and all costs of the action as is deemed fair and reasonable; for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

## COUNT II

### UNCONSTITUTIONAL FAILURE TO TRAIN, SUPERVISE, OR DISCIPLINE PURSUANT TO 42 U.S.C. § 1983 IN VIOLATION OF THE FOURTH AMENDMENT

***Against Defendants City of St. Louis and Defendant Stewart***

72. Plaintiff hereby incorporates the preceding paragraphs by reference as if fully set forth herein.

73. At all times relevant hereto, Defendant City was responsible for overseeing the policies and practices of the St. Louis Metropolitan Police Department, as well as the training, supervision, and discipline of police officers related to those policies and practices.

74. Defendant City's practices for training and supervising its officers in the use of force, for documenting uses of force, and for reviewing and adjudicating uses of force were inadequate. Defendant City was deliberately indifferent to the rights of persons such as Plaintiff in adopting and maintaining those practices, and the deficiencies in those practices caused the violation of Plaintiff's Fourth Amendment rights.

75. The specific deficiencies in Defendant City's training and supervision practices include the following. The allegations in this Count made upon information and belief concern Defendant

City's internal training curricula and materials, its supervisory practices, its use-of-force records, its citizen complaint files, and its disciplinary determinations. None of those materials are public. All of them are within the exclusive possession, custody, and control of Defendant City.[1]

76. First, upon information and belief, Defendant City does not adequately train its officers that force may not be used against a person who has ceased fleeing and has submitted to police authority, does not adequately train its officers to recognize when a person has surrendered, and does not adequately supervise or correct officers who use force after submission.

77. Second, upon information and belief, Defendant City's practice for supervisory review of use-of-force reports does not require the reviewing supervisor to examine available body-worn camera recordings, to identify the materials reviewed, or to reconcile the officer's written narrative against the recorded evidence. In this case that review was completed in thirty-four minutes and identifies no materials reviewed and no corrective action.

78. Third, upon information and belief, Defendant City does not adequately train or supervise its officers in the accurate documentation of uses of force, and does not audit use-of-force reports against available recordings. In this case, Defendant Wilson's narrative described a struggle that the body-worn camera recordings do not depict, and the administrative fields of the same report state that no officer pointed a weapon at a civilian or suspect during the incident, although, upon information and belief, Officer Ruffin or another officer at the scene drew and pointed his firearm at Plaintiff.

79. Fourth, upon information and belief, Defendant City does not require officers working in covert, undercover, or plainclothes assignments to be equipped with and to activate body-worn cameras when they participate in vehicle pursuits based on traffic infractions and arrests. In this

[1] See Ahern Rentals, Inc. v. EquipmentShare.com, Inc., 59 F.4th 948, 954 (8th Cir. 2023).

case, no body-worn camera recorded the incident from the perspective of several officers at the scene.

80. Fifth, upon information and belief, Defendant City's practices for investigating and adjudicating complaints of excessive force do not require investigators to reconcile the accused officer's account against available recordings, with the result that force complaints are closed without a sustained finding and without corrective action even where recorded evidence exists. In this case, the Department classified all allegations arising from this incident as not sustained and imposed no discipline, retraining, counseling, or corrective action.

81. Long before September 3, 2021, Defendant City had notice that the practices described above were inadequate and were likely to result in violations of the Fourth Amendment rights of persons such as Plaintiff.

82. On November 15, 2017, in Ahmad v. City of St. Louis, No. 4:17-cv-02455 (E.D. Mo.), the Honorable Catherine D. Perry entered a preliminary injunction against the City after a three-day evidentiary hearing. The Court found preliminary evidence that officers regularly used hand-held chemical agents without the warnings required by the Department's own Special Order 1-01 and by the Templeton settlement agreement. That finding placed the City on notice that its officers were not complying with its written use-of-force policies and that its training and supervision were inadequate to secure compliance with them.

83. On September 17, 2017, St. Louis Metropolitan Police Department officers encountered Luther Hall—an undercover Department detective whom they mistook for a protester—forcefully brought him to the ground and violently beat him. Mr. Hall sustained injuries requiring multiple surgeries.

84. Four officers were federally indicted in 2018 and a fifth in 2019 in connection with that beating. Randy Hays pleaded guilty to using unreasonable and excessive force and was sentenced to 52 months in federal prison. Dustin Boone was convicted of aiding and abetting the deprivation of civil rights under color of law and sentenced to twelve months and one day. Christopher Myers pleaded guilty to a civil-rights offense involving the destruction of Hall's phone. Bailey Colletta pleaded guilty to making false statements to a federal grand jury and was sentenced to probation.

85. The Hall matter placed the City on notice of the precise practice at issue here: the use of force against a person who had already raised his hands in surrender, followed by false or incomplete accounts of the encounter and concluding with no timely internal discipline. Upon information and belief, the Department did not begin an internal affairs investigation into the Hall beating until 2021, nearly four years after the incident. The Hall matter placed the City on notice that officers could use unreasonable force and then provide false accounts to investigators. The presently available sources do not establish the timing or result of the Department's internal investigation. In 2021, St. Louis City settled Mr. Hall's lawsuit for $5,000,000.

86. In Street v. O'Toole, No. 4:19-cv-02590 (E.D. Mo.), a class action arising from that mass arrest, the plaintiffs pleaded a Monell claim against the City for failure to train, discipline, and supervise and for a custom of conducting unreasonable searches and seizures and using excessive force. That claim survived dismissal and the City remained a defendant on it through at least February 2021 providing additional notice to the City of this custom or practice.

87. Effective July 9, 2020, Defendant City enacted Ordinance 71186, which directed the Commissioner of the St. Louis Metropolitan Police Department to update the Department's use-of-force policy to require officers to use de-escalation tactics when appropriate and possible in place of force; to establish a duty to intervene requiring officers to stop or attempt to stop another

sworn employee when force is being inappropriately applied or is no longer required; and to revise the Department's use-of-force reporting policy to require comprehensive reporting, including a report whenever a weapon is drawn and pointed at a civilian, regardless of whether the weapon is discharged.

88. Defendant City was therefore on notice, more than a year before September 3, 2021, of the need to train and supervise its officers regarding the use of force that is no longer required, the duty of officers to intervene when force is inappropriately applied, and the comprehensive and accurate reporting of force, including the drawing and pointing of weapons at civilians. Ordinance 71186's requirement that the existing policy be revised to require reporting whenever an officer draws and points a weapon reflected Defendant City's recognition that its existing reporting requirements were inadequate.

89. The deficiencies Ordinance 71186 was enacted to correct are the deficiencies at issue here. Force continued to be applied to Plaintiff after it was no longer required; no officer present intervened; and the administrative fields of the incident report state that no officer pointed a weapon at a civilian or suspect during this incident.

90. On December 21, 2020, Defendant City received the final report of an independent administrative assessment of the St. Louis Metropolitan Police Department conducted by Teneo Risk. The Mayor, the Director of Public Safety, and the Police Commissioner jointly released the report and announced that a Review and Implementation Team would be formed within the Department to further analyze and study its findings and recommendations.

91. That assessment found that the Department's use-of-force policies, and the quality of its use-of-force investigations, called into question supervisors' level of accountability and the quality and transparency of the Department's investigative practices. Defendant City thereby had

actual notice, more than eight months before September 3, 2021, of deficiencies in the same supervisory and investigative practices at issue in this Count.

92. The assessment found that although Department policy required an officer who used force to report it and notify a supervisor, and required the supervisor to prepare a report for review up the chain of command, those entries were, in the assessors' understanding, "more of a formality and may only be investigated or reviewed if an allegation or complaint is made," and that the Department's system functioned "more as a data entry system than an investigations tool."

93. The assessment found that Special Order 1-01, the Department's use-of-force philosophy, did not reflect a requirement that officers disclose and justify uses of both deadly and non-deadly force to their supervisors. It further found that the Department's thresholds for supervisory notification, and its quarterly review of uses of force, "may not be sufficient or frequent enough to identify and intervene in instances where officers' deployment of force may jeopardize the rights or safety of the people they serve."

94. The assessment found that the Department lacked a comprehensive early warning system and relied on BlueTeam for warnings limited primarily to uses of force, resulting in a lack of oversight of officers who are the subjects of repeated complaints from community members, and that officers at all levels of the Department perceived that the discipline system lacked transparency and allowed for uneven application of discipline.

95. The assessment recommended, as an immediate measure, that Defendant City mandate that all uses of force undergo investigation, and that each such investigation include gathering evidence, identifying and seeking witnesses, ensuring proper medical care, and reviewing body-worn camera and any other video evidence within twenty-four hours of the incident.

96. Upon information and belief, Defendant City failed to adequately implement those recommendations before September 3, 2021. Defendant Wilson documented his use of force against Plaintiff in a narrative prepared twelve days after the incident; a supervisor approved it thirty minutes after it was submitted; a second supervisor approved and closed it four minutes after that; and the presently available review history identifies no materials reviewed, no investigation of the kind the assessment recommended, and no resulting discipline or corrective action.

97. Notwithstanding Ordinance 71186 and the findings of the Teneo Risk assessment, Defendant City did not, before September 3, 2021, adopt or implement training, supervisory review, or accountability practices sufficient to correct the deficiencies described above.

98. Despite the problems described above, the City failed to adopt reforms, enhanced supervision, or a discipline regime sufficient to prevent the conduct at issue here.

99. The violations of Plaintiff's Fourth Amendment rights, Plaintiff's damages, and the conduct of Defendant Wilson were directly and proximately caused by the actions and inactions of Defendant City, which has been deliberately indifferent in its failure to train, supervise, and discipline.

100. The report's review history reflects that Defendant Stewart approved Defendant Wilson's narrative at 11:11 a.m. on September 15, 2021, and Defendant Stamper approved and closed the report at 11:15 a.m. the same day.

101. Defendant Stewart exercised supervisory authority over Defendant Wilson and the officers involved in this incident. He responded to and supervised the scene, and thereafter reviewed and approved Defendant Wilson's report. Upon information and belief, he had notice of a pattern of prior uses of force by Defendant Wilson and by officers assigned to the Mobile Reserve Unit that were sufficiently similar to the conduct at issue here, had notice that the Department's

training and supervision practices were inadequate and likely to result in constitutional violations, was deliberately indifferent to or tacitly authorized that conduct, and failed to take adequate remedial action. His deliberate indifference and failure to act directly and proximately caused Plaintiff's injuries.

102. Upon information and belief, in the years preceding September 2021, Defendant Wilson, Ruffin and Charleville and other St. Louis Metropolitan Police Department officers were involved in multiple documented use-of-force incidents, many of which involved excessive uses of force, which resulted in no meaningful discipline, suspension, or mandatory retraining.

103. Upon information and belief, prior citizen complaints alleging excessive or unnecessary force were lodged against Defendant Wilson, Ruffin and Charleville and other officers and those complaints were closed without findings or corrective action.

104. Upon information and belief, the City is in possession of additional records of unconstitutional uses of force by its officers that are not public and are within its exclusive custody and control.

105. The failure of the above-named Defendants to act in response to known unconstitutional uses of force, and the failure to train and supervise despite the obvious need for training and supervision, was the moving force behind the violation of Plaintiff's constitutional rights.

106. Had Defendant City adequately trained and supervised its officers regarding the use of force against persons who have submitted to police authority, Defendant Wilson, Ruffin and Charleville would not have struck Plaintiff in the face and body while Plaintiff sat on the ground with his hands above his head. Had Defendant City required meaningful supervisory review of use-of-force reports against available recordings, the deficiencies in Defendant Wilson's account

would have been identified and corrected, and officers would have understood that inaccurate force reporting carries consequences.

107. The Department's disposition of Plaintiff's Internal Affairs complaint, including its decision to impose no discipline or corrective action notwithstanding the body-worn camera evidence available to it, is pleaded as evidence consistent with the continuation of the preexisting custom alleged in Count III, and as evidence of the deliberate indifference of the City's policymaking officials to that custom.

108. The conduct of the above-named individual Defendants involved reckless or callous indifference to Plaintiff's federally protected rights, thereby warranting punitive damages under 42 U.S.C. § 1983 as to those Defendants.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff compensatory damages against all Defendants named in this Count, and punitive damages against Defendant Stewart, in an amount to be proven at trial; and all costs of the action as is deemed fair and reasonable; for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

## COUNT III
## UNCONSTITUTIONAL POLICY, CUSTOM OR PRACTICE IN VIOLATION OF THE FOURTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983
***Against Defendant City of St. Louis***

109. Plaintiff hereby incorporates the preceding paragraphs by reference as if fully set forth herein.

110. At all times relevant hereto, Defendant City maintained a widespread, persistent, and well-settled custom of tolerating, approving, and failing to discipline unconstitutional uses of excessive force by its police officers, and of tolerating and approving the submission of use-of-force reports that misdescribe the conduct of the person against whom force was used.

111. The custom at issue is specific. It is the practice of using significant force against persons who have already submitted to police authority or surrendered, memorializing that force in written reports that misstate what the person did in order to justify it, and closing the resulting supervisory or internal review without discipline or corrective action. The Hall matter reflects that practice. The thirty-four-minute supervisory review of Defendant Wilson's report, and the disposition of Internal Affairs Division file 24-0594 without a single sustained allegation or any consequence, reflect its continuation.

112. On April 10, 2014, St. Louis Metropolitan Police Department officers stopped Cortez Bufford's vehicle, removed him from it, and took him to the ground. While Mr. Bufford was on the ground, officers kicked him and deployed a Taser against him. During the encounter an officer at the scene stated, "Hold up, everybody hold up, we are red right now, so if you guys are worried about the cameras just wait," and the in-car camera recording was then shut off. The written report of the incident stated that Mr. Bufford had struck and kicked several officers before an officer administered a foot strike. The criminal charges against Mr. Bufford were dismissed.

113. The Bufford matter reflects elements of the custom described above: significant force applied to a person who had already been brought to the ground, a written account attributing resistance to that person, and the interruption of the recording that would have documented the encounter.

114. Upon information and belief, prior to the unconstitutional use of force against Plaintiff, the City had a documented history of similar unconstitutional uses of excessive force, including prior citizen complaints, internal affairs investigations, use-of-force reviews, and civil claims involving Defendant Wilson and other officers, the details of which are within the exclusive custody and control of Defendant City.

115. The criminal convictions arising from the Hall beating are alleged here as if fully restated as evidence of the custom described in this Count. The findings in Ahmad, the Street litigation, and the settlements described above are alleged here as if fully restated as evidence of the City's notice of and deliberate indifference to that custom.

116. Plaintiff alleges, upon information and belief, that Defendant City was on notice of many additional unconstitutional uses of force, evidence of which is non-public and exclusively within the custody and control of Defendant City.

117. Collectively, these incidents placed the City on notice of repeated allegations of excessive and unlawful force by its officers prior to the events giving rise to Plaintiff's claims.

118. Despite notice of these unconstitutional customs or practices, Defendant City failed to meaningfully investigate, discipline, retrain, or correct officers who engaged in excessive force, thereby tacitly authorizing such conduct.

119. The Department's handling of Plaintiff's own complaint is consistent with, and evidences the continuation of, that custom. Presented with fourteen allegations and with body-worn camera footage of Plaintiff's surrender and of the ensuing encounter, the Department sustained none of the allegations and imposed no consequence of any kind.

120. This longstanding custom of deliberate indifference to unconstitutional uses of force was the moving force behind Defendant Wilson's use of excessive force against Plaintiff, and as a direct and proximate result of this unconstitutional custom, Plaintiff suffered the injuries and damages described herein.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff compensatory damages in an amount to be proven at trial; and all costs of the action as is deemed fair and

reasonable; for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

Dated: September 3, 2026

Respectfully submitted,

Mark J. Pedroli, MBE 50787
**PEDROLI LAW, LLC**
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-785.7400 Fax
Mark@PedroliLaw.com
*Counsel for Plaintiff Lawrence Galvin*